Mr. Justice DAVIS
delivered the opinion of the court.
The court below confirmed the claim of the appellees to the rancho known as “ Temescal,” embracing five leagues, and situated in the county of San Bernardino.
•It is insisted by the United States that this judgment was wrong, because Leandro Serrano, under whom the appellees claim, had no title, legal or equitable, to the land in controversy.
It can seiwe no useful purpose to review the voluminous testimony in the record, for there is ho substantial difference in it on any point material to the decision of the cause, and hardly any portion of it but what can be readily reconciled. It is clear that Serrano occupied a portion of the property which was confirmed to his widow and heirs continuously, from 1818 or 1819 until his death, which occurred in 1852. The improvements on the place consisted of two or three adobe houses, a small vineyard and fruit orchard, and a few acres in actual cultivation. At different periods of his occupancy he was the owner of cattle, sheep, and horses, which subsisted on the uuinclosed valleys and hills that surrounded his residence. That his possession and occupation were undisturbed and undisputed during the whole period of Mexican sovereignty in California until our acquisition of the country, is fully established. It is not so easy to determine *460 the extent of his possession, but in the view we take of the case, the question is unimportant.
The petition presented to the board of land commissioners asked for the confirmation of this claim on two grounds,— first, because a provisional grant was made; and,.second, by virtue of long-continued and uninterrupted possession. The proof not only negatives the existence of a grant, but clearly shows that Serrano occupied the premises by a written permission from the priest of the mission, or the commandante of San Diego, or from both conjointly. The only witness who pretends ever to have seen a paper concerning a grant was Yillia, an ignorant man, unable to write, with very little knowledge of reading, and who, on being shown some writing, in order to test his ability to read, was unable to tell what it was. It is impossible to escape the conclusion that this witness was mistaken, without discrediting all the remaining evidence, including the repeated declarations of Serrano that he had no title. Yillia evidently saw a paper in the hands of Serrano in relation to this land, but it was not a title of concession by Governor Sala, but the written permission to occupy given by the commauda'nte and priest. The archives of the country are totally silent on the subject, of this pretended grant, and there is no record evidence even of an application for a grant, which exists in ordinary cases. If Serrano even thought he had such a grant, why did he reply to Wilson (who was his friend and relative by marriage), on being advised of the necessity -of perfecting his. title, if he hqd any, “ that he had no title, but had been living on the place ever s'ince the- settlement of California, and everybody respected his claim.”
It is apparent, from the testimony produced by the claimants, without considering that offered by the United States, that the grant was a fiction, and that Serrano, occupied by a written permission given to him by the priest, and perhaps by the commandante.. It is equally certain that this permission was the paper sent by him to Governor Echandea for the purpose of obtaining from him a title. Under the government of Spain, in California, the-commandante or priest *461 had no authority to grant lands, or to make contracts that could bind the Spanish government to grant them. The governors of the country only had this power. If Serrano had an imperfect grant, it would show that he was in possession, claiming title, but a possession under a simple permission to 'occupy could not raise even an equity against the government.*
It is clear, therefore, that there was. nothing done which estopped the Spanish government from denying Serrano’s title, and his bare possession did not bind the Mexican government, during its dominion in California, from 1823- to 1846, not to deny it. The colonization laws of Mexico were exceedingly liberal, and yet they were never invoked by Serrano to aid him in getting a title.
If, then, Spain and Mexico never granted this land, or contracted to grant it, or were under obligations to grant it, the claim has surely no validity as against the United States.
But it is insisted that if the legal title fails, yet the notorious and long-continued possession establishes an equitable one.
The actual possession in this case was limited to a very small quantity of ground; but, conceding that it embraced five leagues, no equities attached to it, considering the manner in which it was obtáined and continued. There is no adverse holding here, but the possession was a permissive one, and consistent with the proprietary interest of Spain and Mexico; and the fact that those governments did not terminate the possession, which was a mere tenancy at will, cannot create an equity entitled to confirmation. Serrano held under a license to occupy, and that license could be revoked at any time. The failure to revoke it cannot change the original character of the possession into an adverse one. If Serrano had entered into possession under a claim of right, and had title-papers, though imperfect, he might say-that the length of his possession entitled him to the favorable consideration of the court. Not so, however, where he had *462 no interest in the land, never applied for any, either to Spain or Mexico, and was content with a permission to occupy it for the purposes of pasturage.
The judgment of the court below is reversed, and the ease rémanded to the District Court of California, with directions to enter an order
Dismissing the petition.
Mr. Justice FIELD did not sit in this case, nor take any part in its decision.

 Peralta case, 19 Howard, 343; United States v. Clarke, 8 Peters, 436.