Harris *v.* The Mansfield Railway, Light & Power Co.

*Negligence — Evidence — Competency — Motormen — Quasi-expert testimony—Furnishing jury written instructions during deliberations—Pleading last chance—Prerequisite to charge, when.*

1. In an action for injuries to one riding in an automobile, suffered in a collision with an electric car, the evidence of motormen, with reference to running of the car and means for stopping it, is not rendered incompetent by reason of the fact that their testimony was in a sense that of experts involving *quasi*-conclusions which it is the special province of the jury to deduce.
2. It is not error to send to the jury room written instructions asked for and given before argument; and so doing is not inconsistent with the fact that where the charge given after argument is oral it is impossible that instructions so given should also be sent to the jury room.
3. The doctrine of last chance must be pleaded to entitle a party claiming its benefits to instructions upon it.

(Decided January 22, 1915.)

ERROR:   Court of Appeals for Richland county.

*Messrs. Brucker, Voegele & Henkel,* for plaintiff in error.

*Messrs. McBride &. Wolfe,* for defendant in error.

GRANT, J. (of the Eighth District, sitting in place of VOORHEES, J.).   This proceeding seeks the reversal of the judgment of the court of common pleas because certain errors, as is alleged, have intervened and are shown by the record to the prejudice of the complaining party.

The parties here, as to position, stand in the order of their standing below.

The plaintiff, Mary Harris, declared on certain acts and omissions amounting to alleged negligence in the operation of one of the defendant's cars, whereby she, without contributing fault on her part, came to her injuries while riding as an invited passenger in an automobile, as was said by her.

The defendant denied the charging parts of the petition by its answer, and retorted certain acts and omissions by the plaintiff as the causes which proximately contributed to, if they did not directly occasion, the hurts received by her.   Upon issue joined as to the latter by reply, the cause was put upon its trial to a jury.   There was a verdict for the defendant, upon which judgment was entered after a motion for a new trial had been denied.   To reverse that judgment is the prayer of this petition in error.

The main alleged grievances relied on to work such reversals are, as stated in the brief of the plaintiff, as follows:

First. Evidence admitted for the defendant and objected to by plaintiff; refusal to admit proper cross-examination of motorman.

Second. Upon the weight of the testimony plaintiff was entitled to recover.

Third. Error in giving special request to the jury.

Fourth. In sending to the jury the written request of the defendant below given to the jury before argument.

Fifth. In refusing to instruct the jury to consider the oral charge in connection with the written request of the defendant below; in other words, allowing the jury to take the written request of the defendant below to the jury room and not instructing the jury to consider the same in connection with the oral charge given in this case.

Sixth. "Error in generally charging the jury."

In substance we are of the opinion that this rather formidable assignment of errors may be considerably abridged in the discussion of the principles and authorities involved, through the operation of the law of the survival of the fittest.

The first of these has to do with the admission of evidence from two motormen, which partook, necessarily, of the nature of expert information thus imparted to the jury. Equally necessary, as we think, it carried with it something looking like *quasi* conclusions, which, it is vehemently urged in argument, was a clear invasion of what should always be the open and unshared field of the jury.

No inconsiderable part of the not inconsiderable brief of the plaintiff — in fact, thirty-six out of its sixty-five pages — is devoted to this one question. A bead roll — it might be called the long roll — of 542 cases is cited in support of this one contention. The brief is quite a misnomer. It is not brief. In this array, bristling with citation, five times the roll of this Union, from Alabama to Wisconsin, is called, and then the briefer invades England by running the blockade or sailing in judicial Zeppelins. Lest complaint should be made of want of good measure, a lot of cases from the supreme court of the United States are thrown in to make the scale beam kick high. In all this ransacking of the armories of case law for weapons to work a reversal, scant attention is paid to a state still on the legal map — to-wit, Ohio. It would, perhaps, be overputting it to say that in this brief without brevity, Ohio has not been paid "the cold respect of a passing glance," but the fact is pretty near that. The case upon which in our opinion this allegation of error must decisively turn, is not mentioned in the main brief of the plaintiff. It is only when it is brought forward under a vigorous claim of being a binding authority here, in the defendant's brief, that some attention is paid to it in the reply brief of the plaintiff. It is the case of *The Bellefontaine & Indiana Rd. Co.* v. *Bailey,* 11 Ohio St., 333, the syllabus whereof is as follows:

"In an action to recover damages against a railroad company for the killing of plaintiff's horses by means of the negligence of the servants of the company in the running and management of a locomotive and train, the engineer in charge of the

locomotive at the time of such killing, who saw the horses when they came upon the track, who is shown to be acquainted with the business of running railroad locomotives and trains, and had been engaged in such business for five years, is competent to testify, as an expert, upon questions in respect to the management of locomotives and trains, and to give an opinion whether, in view of the distance between the engine and the horses when the latter came upon the track, it was possible to avoid the injury complained of."

Because of the long roll referred to we have examined this case with unusual care, to see if it is to be distinguished to any material effect from the case at bar, and we do not see why it can be. We do not see why it should be. The reasoning that must, coercively, as we think, be brought to bear upon its application to this case appears to us to be conclusive. The motormen witnesses were conversant, technically as well as actually, with the workings of their cars, and the foundation in this respect for the introduction of expert and opinion testimony was sufficiently laid. The fact that these experts led what may be called a dual life in this particular—that is, that they were expert mechanicians and at the same time practical motormen —should not, we think, detract from the value of their testimony. Rather, it should seem, it would add to it in its application to a concrete case in hand, if they were truthful men. They can not divorce themselves from this twofold relation. The fact that it is double is but an accident of the particular situation. There is nothing disclosed by the record looking like dishonesty in their testi-

mony.   If they testified under the fear of losing
their employment with the defendant company, it
is not apparent here.   And if it were, it would be a
matter of weight and not competency.   And in such
case a plaintiff almost never fails to get the benefit
of the fact by inveighing to the jury against wit-
nesses who swear with the customary halter of fear
of losing their jobs around their necks.

So much for the underlying principles involved.

We have examined the matter also in the light
of Judge Brinkerhoff's rather informing opinion
in the case cited.   His reasoning and the authorities
marshalled by him to support it are cogent and
convincing.   They seem to put the decision on such
satisfactory grounds that it has not since been dis-
turbed, though often invoked and often challenged,
no doubt, and, as we must think, followed in cases
to which it has been thought properly to appertain.

In any event, if applicable to the case in hand, it
is conclusive on us.   We think it is so applicable,
and applying it we find that the ruling of the trial
court in admitting the testimony in question was
not obnoxious to the complaint lodged against it in
this proceeding.   We are confident that the weight
of authority really bearing on this precise question
supports and reinforces this conclusion.

The next assigned error is in substance and
effect, although differently worded in the brief,
that the verdict and consequent judgment is against
the manifest weight of the evidence and is not sup-
ported by the evidence.

That question in this case was so peculiarly a
matter for the jury to determine, when properly

8

instructed by the court, that we do not feel justified in canvassing it in much detail. Each side had its view of the case, and each accordingly directed its evidence to that view of the facts which sustained its contention. That this resulted in narrations radically in conflict with one another was to be looked for. It was for the jury to say with which side they found the truth to reside when they applied the law the court gave them to the facts before them. By their verdict they have spoken, and we can find nothing in their verdict that is manifestly against the facts the jury might appropriately have found in sifting the testimony brought before them and applying the law to these. We are not a jury nor a substitute for a jury. If we were, we are not prepared to say that upon the facts disclosed by this record we should have found differently.

In regard to the next assignment of error, to the effect that the requests to charge before argument should have been refused, our opinion is that the point is not well taken. To our apprehension they state the law of Ohio appertaining to the issue.

The fourth allegation of intervening error is that the court sent the written requests to instruct before argument to the jury in their retirement, to be used by them when they should consider of their verdict. In so doing the court did only what we understand to be the bidding of the statute in that respect. Otherwise the right to have the instructions framed in writing and given without change in verbiage would, it should seem, be a rather barren right. There was no error in this.

It is next complained, seemingly, that the court sent the written instructions to the jury but did not send the general charge, so that the two might be comparatively considered in connection with each other, which it is said should have been done.

. As the general charge was wholly oral, as is said, how it could have been thus sent, except through the friendly aid of a dictagraph, is not perceived. The fact seems to be that counsel for the plaintiff were taken by surprise by the oral charge and did not think of asking to withdraw a juror—not till now. Counsel were wrong about this. They should not be surprised at anything. *"Semper paratus"* is, or should be, their slogan, instead of "Onward, Christian Soldiers"—to a job, or, in this case, a verdict.

The last assignment is leveled at the generally bad character of the charge as given to the jury.

The complaint is a little nebulous in our estimation when we come to details. We do not care, therefore, to discuss the matter very minutely. What the trial court should have done if requested to give instructions in charge to the jury, if those given were deemed insufficient, need not be discussed where no such request was made. What should have been charged without request, because it was in the case, is another matter. Our attention in this respect is challenged to the claim that the doctrine of the last chance, and possibly other matters, was in the case and should in fairness have been dealt with by the court below in its charge to the jury. To this it is answered that the doctrine of the last chance must be pleaded to entitle a party

claiming its benefit to an instruction upon it, and that without so pleading it, it is not to be considered. The reply to this proposition is that the office of pleadings is to present in an orderly form the issues to which all the relevant evidence in the case must be directed, so that—such is the argument—the whole issue consists of what arises from the evidence adduced, the evidence constituting the real issue, the function of the pleadings being to conform the latter to the former, as it may be developed upon the trial. Upon a rational footing we should think the latter view to be the true view. Even the opinion of the supreme court, in *Drown* v. *The Northern Ohio Traction Co.,* 76 Ohio St., 234, does not seem to be to the contrary. It is true that the syllabus there says:

"3. Since the plaintiff can recover only upon the allegations of his petition, he can not recover upon negligence which warrants the application of the rule of 'last chance' without alleging it in his petition."

Yet Judge Davis seems to flinch from so guarded an interpretation as this, for in the opinion in the same case, page 249, he explains:

"It is clear, then, that the last chance rule should not be given as a hit or miss rule in every case involving negligence. It should be given with discrimination. Since the plaintiff can recover only upon the allegations of his petition, if there is no charge in the petition that the defendant after having notice of the plaintiff's peril could have avoided the injury to plaintiff *and there is no testimony to support such charge,* the giving of such a charge would be erroneous."

As the syllabus is supposed to state the law rather than the opinion, in case of conflict between the two we should follow the former.

Later, in *Palmer* v. *Humiston,* 87 Ohio St., 401, the syllabus says:

"1.   The issues of a case are defined by and *confined to the pleadings.*"

If words level to the comprehension of lawyer and layman alike go for anything at all, it would seem that this last deliverance is fatal to the contention made here.

But in *Rayland Coal Co.* v. *McFadden, Admr.* (90 Ohio St., 183), first appearing in print January 18, 1915, the same supreme court is in the syllabus made to say:

"In such case the issue of contributory negligence is not made by the pleadings but is raised by the evidence properly offered by the parties in support of their respective claims as made in the pleadings.   The issue of contributory negligence thus raised is to be determined by the same rules as to burden of proof and otherwise as if made by the pleadings."

A careful consideration of the two cases last cited, bearing in mind the particular facts of each, will, we think, leave neither under the reproach of distinctive inconsistency with the other.   In the former the issue of a custom, not raised by the pleadings, was undertaken to be forced into the case by the evidence, over the objection of the party against whom it was brought forward.   In the latter an issue not pleaded was introduced by the evidence route, but by sufferance of both parties and apparently without objection by either.   A denial

of the propriety of such an issue in the former and an allowance of it in the latter, was no more than stating a salutary rule for the guidance of all courts for the correction of errors—namely, that they are to review, not necessarily the case that might have been tried below, not the case that should have been tried below, but the case that *was* tried there.

Such, we take it, is the distinction which brings the two cases into complete harmony and settles a question which for want of being sufficiently attended to sometimes begets confusion and consequent error.

We think this contention must still be controlled by *Drown* v. *Traction Co., supra,* which forces the issue of last chance out of the case, it not being there by the pleadings.   And we so hold.

Upon what we have tried to make an impartial survey of the record before us, we feel that we ought to adhere to the former judgment in this court in *The Northern Ohio Traction & Light Co.* v. *Jenkins, Admr.,* 3 Ohio App., 161, of which the syllabus is as follows:

"Nor will the judgment based upon such a finding be disturbed for technical errors in the admission of evidence or the charge of the court, where it appears from the entire record that substantial justice has been rendered under all the circumstances."

In closing this opinion it may not be amiss to say an after-word, lest from what has been said in respect of a brief in this case more may be inferred than was intended, and lest the implied criticism thereupon be thought too harsh.

We are told in the good book that "All scripture is * * * profitable for doctrine, for reproof, for correction, for instruction in righteousness." In what was said and will now be said all thought of "reproof" or of "correction" in a penal sense is disclaimed. Something "profitable" by way of "doctrine" and "righteousness" is not despaired of.

The mere mechanic-at-law, as Theodore Parker used to call him, and his work by the yard, or hundred, or on the piece-price plan, should distinctly lack encouragement by the profession, no matter how sharp his tools are or however conveniently arranged these may be in the tool box. One case decided by the court of last resort in the state of the forum which is in point shall chase a thousand cases somewheres near in point, and a like number from other states, brought forward to overthrow it. The latter are apt to have an effect on the judicial mind, charged with too much work to delight in listening to the roll call of the states, akin to that produced by a catswamp on agriculture —the ground is too overloaded with underbrush to bring good crops.

Out of the "six hundred" and odd cited cases, on which the Light Brigade have ridden into the jaws of death, in the brief, we have two, the titles' of which are very suggestive. One is *Radam* v. *Microbe Destroyer Co.* The other is *Union Painless Dentists* v. *Dement.* If the "microbe" for using the scissors on a digest and asking people to read the scissorings could be reached by the "Destroyer Company," the first case would be in point. If the citer had to use his jaws instead of a type-

writer, the work of the "Union Painless Dentists" would be in point, or else another syllable would have to be added to the name of the defendant, "Dement."

We observe also a case in which the "Highland Boy Co." is a party and one in which Mr. "Pepper" is plaintiff. Neither of these reconciles a tired man with briefs that are anything—almost—but brief.

My brethren are not responsible for this comment, although it is to be hoped that they may share in the *usufruct,* if so be any briefer is exorcised thereby.

We find no material error to the prejudice of the complaining party in this record, nor are we able to say that substantial justice has not been done by the judgment complained of. For which reason it is affirmed.

*Judgment affirmed.*

POWELL, J., concurs.
SHIELDS, J., dissents.