14-360-cr
United States v. Taylor

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2014
No. 14-360-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

DEWEY TAYLOR, AKA Road Rash,
*Defendant-Appellant,*

JOHN SMITH, AKA Kazoo, RICKY ALLEN, TERRANCE HALL, AKA Bam,
JOHNNIE GIBSON, AKA Goldie, WILLIA SZYMANSKI, EMANUEL E. BELL,
JEFFERY ACHATZ, DALE LOCKWOOD, ANTHONY BURLEY,
FRANK OWENS, VAN MILLER,
*Defendants.*[*]

---

Appeal from the United States District Court
for the Western District of New York.
No. 11-cr-85-1 — Richard J. Arcara, *Judge.*

---

[*] The Clerk is directed to amend the caption to conform to the caption above.

ARGUED: MAY 29, 2015

DECIDED: MARCH 2, 2016

_____

Before: POOLER, LOHIER, and DRONEY, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*), convicting Defendant-Appellant Dewey Taylor, following a jury trial, of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846, and seven counts of transaction structuring for the purpose of evading currency reporting requirements in violation of 31 U.S.C. § 5324. We **AFFIRM** the judgment of conviction as to the conspiracy to distribute cocaine, **REVERSE** the judgment of conviction as to the transaction structuring counts, and **REMAND** for resentencing.

_____

LAWRENCE D. GERZOG, New York, NY, *for Defendant-Appellant*.

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

_____

DRONEY, *Circuit Judge*:

Defendant-Appellant Dewey Taylor appeals from a judgment entered in the United States District Court for the Western District of New York (Arcara, *J.*), following a jury trial, convicting him of one count of conspiracy to distribute or possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and seven counts of transaction structuring for the purpose of evading currency reporting requirements in violation of 31 U.S.C. § 5324(a)(1) and (a)(3).

Taylor argues that his conviction for the cocaine conspiracy must be vacated because it constituted a constructive amendment of the indictment, which charged a conspiracy involving a larger amount — five kilograms or more — of cocaine. Taylor also argues that there was insufficient evidence to allow a jury to reasonably infer an intent to evade the currency reporting requirements because the evidence did not establish a pattern of structured transactions

sufficient to indicate that intent.

We **AFFIRM** the judgment of conviction as to the cocaine conspiracy count, but **REVERSE** as to the transaction structuring counts, and **REMAND** for resentencing.

**BACKGROUND**

Taylor was a member of the Afro Dogs Motorcycle Club, a national motorcycle and social club. Taylor, along with his co-defendants John Smith and Ricky Allen, held various leadership positions in the Buffalo, New York chapter of the club.

In the fall of 2009, the Government began investigating Smith for his suspected involvement in trafficking cocaine, setting up a series of controlled buys at Smith's residence and the Afro Dogs' Buffalo clubhouse after a cocaine dealer was arrested and informed the police that Smith was his supplier of cocaine. The Government presented evidence at trial that Smith regularly packaged and stored cocaine in Allen's house, where Smith also counted and stored cash

ranging in amounts from $40,000 to more than $100,000.

The Government also presented evidence of Taylor's involvement in the drug operation. At Smith's request, Taylor delivered to Allen's house a package that contained a kilogram of powder cocaine and crack cocaine. Taylor stored the package in Allen's basement. On two or three other occasions, Taylor helped Smith count money from drug proceeds in Allen's kitchen.

Taylor was charged, along with Smith, Allen, and nine others, in a November 2010 indictment with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.[1] Taylor alone was charged with thirteen counts of transaction structuring for the purpose of evading currency reporting

---

[1] The indictment also charged Smith, Allen, and co-defendant Terrance Hall with various other drug crimes. Smith, Allen, and several other co-defendants pled guilty prior to trial. Smith died before trial.

Four other defendants went to trial with Taylor, all of whom were charged with the same drug conspiracy count. Three of the four other defendants were acquitted, and the jury deadlocked as to the remaining defendant.

requirements under 31 U.S.C. §§ 5313(a), 5324(a)(1), and 5324(a)(3).

At the defendants' trial, the Government called seventeen witnesses, including Allen, to testify about the drug conspiracy. Allen had pled guilty and was a cooperating witness for the Government. The Government also presented evidence of the drug conspiracy obtained through wiretaps authorized on Smith's phones, including conversations between Smith and Taylor. Taylor called no witnesses.

In support of the structuring counts, the Government called two witnesses and introduced Taylor's credit union records.

Following the close of evidence, Taylor moved pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal on the drug conspiracy count as well as the structuring counts. The Government moved to dismiss six of the structuring counts, as it conceded it had presented no evidence as to those counts. The court granted the Government's motion as to those six counts and denied

6

Taylor's motion as to the drug conspiracy count and the remaining seven structuring counts.[2]

The jury convicted Taylor of the drug conspiracy count for the amount of 500 grams or more of cocaine and of all seven structuring counts.[3] The court sentenced Taylor to 144 months' imprisonment on the drug conspiracy count and to sixty months' imprisonment on each of the transaction structuring counts, to be served concurrently with one another and with the 144 month sentence on the drug conspiracy count.

**DISCUSSION**

**I.     Constructive Amendment of the Drug Conspiracy Count**

The district court instructed the jury that to prove the drug conspiracy charge against Taylor, the Government must establish

---

[2] The Government filed a redacted indictment which included only the drug conspiracy count (count one) and the seven remaining structuring counts directed only at Taylor (counts two through eight).

[3] Pursuant to Federal Rule Criminal Procedure 29(c), Taylor renewed his motion for a judgment of acquittal after the jury verdict, but it was denied.

beyond a reasonable doubt the following elements: (1) "that two or more persons entered into an unlawful agreement charged in the indictment," and (2) that Taylor "knowingly became a member of the conspiracy." App. 101. As to the quantity of drugs involved in the conspiracy, the court instructed the jury as follows:

> If you find that the Government has proven beyond a reasonable doubt the two elements [of conspiracy] that I have just described, then there is one more issue that you must decide. I will provide you with a special verdict form asking you to fill in the type and amount of drugs that the defendants conspired to possess with intent to distribute. The burden is on the Government to establish the type and amount of drugs beyond a reasonable doubt.

App. 106-07. This portion of the charge was based on the proposed jury instructions of the Government and two of Taylor's co-defendants, which Taylor adopted.

The district court also instructed the jury that:

> [C]ount one charges the defendant with a conspiracy to distribute and to possess with the intent to distribute five kilograms or more of a mixture or substance containing cocaine. Now, there's a verdict sheet . . .

8

which will be given to you and will require you to specify, in the event of a guilty verdict on count one, whether the conspiracy proven involved cocaine. You must then unanimously agree upon which controlled substance or substances were involved in the conspiracy.

You must also determine the weight of the controlled substances involved in the conspiracy. And I'll go over that verdict sheet with you in a few minutes. Specifically, should you determine that the conspiracy charged in count one involved a mixture or substance containing cocaine, you must determine whether the weight of that mixture or substance was five kilograms or more, or if it was 500 grams or more, or if it was less than 500 grams.[4]

App. 114-15. Taylor's counsel did not object to this portion of the charge or the special verdict form.

The jury found Taylor guilty of "conspir[acy] to possess with intent to distribute and to distribute a mixture or substance containing cocaine." App. 127. As to the quantity options, the jury determined the amount of cocaine to be "500 grams or more."

---

[4] The three quantity amounts set forth on the verdict form reflect the threshold amounts of cocaine triggering different mandatory minimum periods of incarceration and related penalties in 21 U.S.C. § 841(b).

District Ct. Docket No. 237, at 2.

Taylor argues that this conviction based on an amount of cocaine less than that charged in the indictment constituted an unlawful constructive amendment of the indictment.[5]

An indictment has been constructively amended "[w]hen the trial evidence or the jury charge operates to broaden[] the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (alterations in original) (quoting *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005)). Constructive amendment is "a *per se* violation" of the Fifth Amendment's Grand Jury Clause, "sufficient to secure relief without any showing of prejudice." *United States v. Agrawal*, 726 F.3d 235, 259-60 (2d Cir. 2013). Nevertheless, "this court has proceeded cautiously in identifying such error, 'consistently permitt[ing] significant flexibility in proof, provided that the defendant was

---

[5] Taylor does not challenge the sufficiency of the evidence as to this count on appeal.

10

given *notice* of the *core of criminality* to be proven at trial.'" *Id.* at 260 (alteration in original) (quoting *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012)).

"To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *D'Amelio*, 683 F.3d at 416 (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)). This Court generally reviews a constructive amendment challenge *de novo*. *Agrawal*, 726 F.3d at 259. However, where, as here, the claim was not raised in the district court, this Court reviews the claim for plain error. *United States v. Bastian*, 770 F.3d 212, 219 (2d Cir. 2014). To correct an error under this standard, there must be "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s]

11

substantial rights.'  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"  *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alterations in original) (citation omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Federal Rule of Criminal Procedure 31(c)(1) provides, however, that "[a] defendant may be found guilty of . . . an offense necessarily included in the offense charged."  We have made clear that an "indictment need not charge the defendant with the lesser [included] offense in order for the trial court to submit that offense to the jury."  *United States v. Dhinsa*, 243 F.3d 635, 674 (2d Cir. 2001).

Taylor concedes that his offense of conviction, conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, is a lesser included offense of the crime charged in the indictment,

12

conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of §§ 841(a)(1), 841(b)(1)(A), and 846. Other than the quantity of drugs, the elements of those offenses are identical. But Taylor argues that Rule 31(c) does not apply because "neither the defense nor the government sought or obtained an instruction on the lesser included offense,"[6] Appellant Br. 13-14, and the jury was not instructed that finding a drug quantity less than 5 kilograms "could be a basis for a finding of guilt." Appellant Reply Br. 4.

In support of the latter argument, Taylor relies on *United States v. Dhinsa*, 243 F.3d at 673-76, in which we vacated a Violent Crime in Aid of Racketeering ("VICAR") conviction under 18 U.S.C. § 1959. The VICAR offense charged in the indictment was based on the New York state offense of coercion in the first degree. *Id.* at 672.

---

[6] As discussed above, the portion of the jury charge relating to amounts was based on proposed jury instructions from the Government and two of Taylor's co-defendants, which Taylor adopted. Thus, Taylor agreed to the charge which included the determination of amount, although it was not identified by the district court as a "lesser included offense" determination.

13

We concluded that the Government had failed to meet its burden of establishing that the defendant engaged in coercion, but the Government argued that we should nonetheless affirm the conviction because the evidence was sufficient to establish that the defendant committed the lesser offense of attempted coercion. *See id.* at 672-73. The jury was never charged on attempted coercion, however. *Id.* at 673. We held that we could not affirm the conviction "based on the lesser offense of attempted coercion in the first degree where there is sufficient evidence to sustain a conviction on the lesser offense, but where the district court failed to charge the jury on that offense." *Id.* at 673.

*Dhinsa* is of no help to Taylor. Unlike in *Dhinsa*, the district court here properly charged the jury on the lesser included offense of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine. The court instructed the jury on the two essential elements of conspiracy — the existence of a conspiracy and

14

Taylor's willfully joining it. *See United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1989). The court also instructed the jury on the drug quantity element required for narcotics offenses under 21 U.S.C. § 841(b), *see United States v. Gonzalez*, 420 F.3d 111, 129 (2d Cir. 2005), as requested by the Government, Taylor, and two of his co-defendants. Finally, the court explained that "should you determine that the conspiracy charged in count one involved a mixture or substance containing cocaine, you must determine whether the weight of that mixture or substance was five kilograms or more, or if it was 500 grams or more, or if it was less than 500 grams." App. 115. The special verdict form separated the issue of conspiratorial liability from quantity, expressly giving the jury the option of finding Taylor guilty of a conspiracy involving five kilograms or more of cocaine, or of the lesser included offenses of a conspiracy involving 500 grams or more or less than 500 grams. Having been properly charged on the lesser included offenses, the jury

determined that Taylor conspired to distribute and possess with intent to distribute "500 grams or more" of cocaine. App. 127.

Taylor's conviction of conspiracy to distribute and possess within intent to distribute cocaine involving a quantity specified in 21 U.S.C. § 841(b)(1)(B) was therefore not a constructive amendment of the indictment charging him with conspiracy involving a quantity specified in § 841(b)(1)(A). As other courts have recognized, such a conviction is simply a conviction for a lesser included offense of the offense charged in the indictment, which is entirely appropriate under Federal Rule of Criminal Procedure 31(c). *See, e.g.*, *United States v. Martinez*, 430 F.3d 317, 339-40 (6th Cir. 2005). Trial courts need not use the actual words "lesser included offense" in the jury charge or explicitly explain the concept of a lesser included offense to the jury, so long as the defendant is given notice of the "*core of criminality* to be proven at trial" and the presentation of evidence and jury instructions do not "modify [the] *essential elements* of the

16

offense charged." *See D'Amelio*, 683 F.3d at 416-17 (internal quotation marks omitted).

Thus, the jury was properly charged on the lesser included offense that was the basis for his conviction on count one, and Taylor's conviction on that count is affirmed.

**II. Sufficiency of the Evidence to Support the Transaction Structuring Convictions**

In addition to the drug conspiracy offense in count one, the redacted indictment charged Taylor with seven counts of transaction structuring for the purpose of evading currency reporting requirements. Under 31 U.S.C. § 5313(a) and implementing regulations, domestic financial institutions must file Currency Transaction Reports ("CTRs") with the Financial Crimes Enforcement Network (FinCEN) of the Treasury Department whenever they are involved in transactions for the exchange of

currency exceeding $10,000 during one business day.[7] *See* 31 U.S.C. § 5313(a); 31 C.F.R. §§ 1010.311, 1010.313(b). Section 5324 of the same subchapter makes it a crime to cause, or attempt to cause, a financial institution to not file a required CTR. 31 U.S.C. § 5324(a).

As to the seven structuring counts, the Government presented evidence that Taylor owned D.T. Liquor,[8] a liquor store that operated as a "cash business" in Buffalo, New York. App. 69. *See* District Ct. Docket No. 313, at 133. D.T. Liquor maintained a business checking account at Erie Metro Federal Credit Union ("Erie Metro"). Taylor was a signatory for that account. Taylor also had a personal bank account at Erie Metro, and was a frequent customer at

---

[7] Previously, these forms were filed directly with the Internal Revenue Service. Their purpose, as described in FinCEN's educational pamphlet, is to "safeguard the financial industry from threats posed by money laundering and other financial crime." FinCEN, *Notice to Customers: A CTR Reference Guide* (2009), http://www.fincen.gov/whatsnew/pdf/CTRPamphletBW.pdf.

[8] Although Taylor contends that his father owned the store, viewing the evidence in the light most favorable to the Government — as we must do on review of the sufficiency of the evidence to support a criminal conviction, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979) — the record supports the conclusion that Taylor owned the store.

a branch office of the credit union in Buffalo.

Taylor made dozens of deposits into D.T. Liquor's account and his personal account from March 2008 to November 2009. Relevant to this appeal are three categories of transactions in that period. These transactions were contained in Erie Metro records that were introduced into evidence by the Government at trial. The first category consists of the seven so-called "split" cash deposits that the indictment charged as structured transactions for the purpose of evading CTR requirements, App. 22, 23, 25, 28-29, 32-33, 37-38, 41-42, 45-46:

| Count | Date | Amount of Deposits | Account |
|-------|------|--------------------|---------|
| 2 | 3/4/2008 | $10,000<br>$2,050 | D.T. Liquor's account<br>D.T. Liquor's account |
| 3 | 3/7/2008 | $6,300<br>$4,000 | D.T. Liquor's account<br>Taylor's account |
| 4 | 5/9/2008 | $9,100<br>$2,000 | D.T. Liquor's account<br>Taylor's account |
| 5 | 6/24/2008 | $9,550<br>$655 | D.T. Liquor's account<br>Taylor's account |

| | | | |
|---|---|---|---|
| 6 | 9/15/2008 | $9,800 | D.T. Liquor's account |
| | | $1,000 | Taylor's account |
| 7 | 10/27/2008 | $9,700 | D.T. Liquor's account |
| | | $1,000 | Taylor's account |
| 8 | 11/03/2009 | $3,200 | Taylor's account |
| | | $4,000 | Taylor's account |
| | | $3,000 | Taylor's account |

The second category includes transactions during the same period that involved deposits exceeding $10,000, App. 24, 30, 34, 39, 40, 43, 47:[9]

| Date | Amount | Account |
|---|---|---|
| 3/10/2008 | $14,500 | D.T. Liquor's account |
| 3/19/2008 | $10,100 | D.T. Liquor's account |
| 5/13/2008 | $15,000 | D.T. Liquor's account |
| 5/27/2008 | $10,100 | D.T. Liquor's account |
| 6/20/2008 | $14,557 | D.T. Liquor's account |
| 6/27/2008 | $15,950 | D.T. Liquor's account |
| 7/1/2008 | $13,150 | D.T. Liquor's account |
| 7/7/2008 | $23,000 | D.T. Liquor's account |
| 8/27/2008 | $17,600 | D.T. Liquor's account |

[9] The Government did not submit deposit receipts for these deposits; rather, it submitted general account statements that do not include a notation as to whether these deposits were in cash. Two Government witnesses testified, however, that to the best of their knowledge D.T. Liquor was a cash business. It seems certain, therefore, that most if not all of these deposits were also in cash.

| 9/12/2008 | $12,550 | D.T. Liquor's account |
|---|---|---|
| 9/22/2008 | $12,961 | D.T. Liquor's account |
| 10/20/2008 | $11,000 | D.T. Liquor's account |
| 11/03/2008 | $12,800 | D.T. Liquor's account |
| 12/01/2008 | $16,500 | Taylor's account |
| 11/02/2009 | $12,000 | Taylor's account |
| 11/10/2009 | $23,000 | Taylor's account |
| 11/25/2009 | $17,800 | Taylor's account |

The third category consists of transactions where, in at least a few instances in May and November of 2008, multiple separate deposits were made in one day totaling less than $10,000, which would not have generated CTRs.

Of the seven "split" transactions charged as structured transactions, Taylor presented every pair of deposits to a single teller at the same branch of Erie Metro in Buffalo, generally within seconds or minutes of each other.[10] Evidence showed that cash deposits were often used, sometimes immediately after being

[10] The one exception involves the deposits on November 3, 2009, where the first two amounts were deposited simultaneously but the third was deposited two hours later, although with the same teller.

deposited, to pay expenses for the liquor store, such as insurance, payroll, and gasoline.

In addition to presenting the bank records of these deposits, the Government called two witnesses to testify relating to the structuring charges, Ramon Gallardo, Jr., the CEO of Erie Metro, and David Turri, a special agent of the Criminal Investigation Division of the Internal Revenue Service. Gallardo testified that he was "[s]omewhat" familiar with Taylor and that his staff had an "ongoing relationship" with Taylor "because of his frequent visits to the credit union." District Ct. Docket No. 313, at 65, 76. Gallardo also testified that it was Erie Metro's policy for tellers to inform customers that the credit union was obligated to file CTRs whenever a customer deposited more than $10,000 in cash, and that CTRs were required even if a customer made multiple cash deposits at approximately the same time — even into different accounts — and the total exceeded $10,000. Turri similarly testified that CTRs were

required for split cash deposits exceeding $10,000 and that there were CTRs "filed concerning D.T. Liquor[] prior to the [Government's] investigation" into Taylor. App. 68.

Taylor argues that there was insufficient evidence to allow a jury to reasonably infer his intent to evade the currency reporting requirements because the evidence did not establish a sufficient pattern of structured transactions.

We review challenges to the sufficiency of the evidence *de novo*. *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997). "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). A judgment of acquittal can be entered "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager" that no "rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the Government, we hold that no rational jury could conclude beyond a reasonable doubt that Taylor intended to structure the transactions in Counts Two through Eight for the purpose of evading currency reporting requirements.

As discussed above, under 31 U.S.C. § 5313(a) and an accompanying regulation, domestic financial institutions generally must file CTRs for cash transactions exceeding $10,000. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. Section 5324 prohibits individuals from structuring transactions to evade this reporting requirement, providing that:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) . . . cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) . . . [or]

24

structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C. § 5324(a). To violate § 5324, "(1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement." *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005).

As to the first element, Taylor stipulated at trial that he made at least some of the deposits reflected in the credit union records. Moreover, Taylor retained control over and was signatory to both his personal account and the D.T. Liquor account. Taylor frequented Erie Metro to make transactions involving these accounts, and there is no evidence that anyone else had access to the accounts. Finally, the Government presented evidence of deposit slips containing signatures from deposits into the D.T. Liquor

25

account and Taylor's personal account that were virtually identical. The evidence presented at trial was more than sufficient to support the jury's inference that Taylor made all the deposits.

As to the second structuring element, Taylor concedes that the jury could reasonably infer that he was aware of the reporting requirements for deposits exceeding $10,000.

It is the third element, acting with the intent to evade the currency reporting requirements, which requires vacating the structuring counts of conviction. Congress included an intent requirement in § 5324 in order to "shield[] innocent conduct from prosecution." *United States v. Scanio*, 900 F.2d 485, 491 (2d Cir. 1990) (quoting *The Drug Money Seizure Act and the Bank Secrecy Act Amendments: Hearing on S. 571 and S. 2306 Before the S. Comm. on Banking, Housing, & Urban Affairs*, 99th Cong. 137 (1986) ("*Senate Hearings*") (statement of James Knapp, Deputy Assistant Att'y General, Department of Justice, and Brian A. Sun, Assistant United

States Attorney of the Central District of California)), *abrogated by Ratzlaf v. United States*, 510 U.S. 135 (1994).[11]   Individuals who "inadvertently divide a currency transaction in excess of $10,000 into smaller transactions [are] not . . . subject to structuring liability since [§ 5324] 'requires proof beyond a reasonable doubt that the purpose of the "structured" aspect of a currency exchange was to evade the reporting requirements.'"   *Id.* (quoting a Justice Department response to a written question at Senate hearings on the bill amending § 5324).

Most appellate decisions upholding structuring convictions

---

[11] *Ratzlaf* held that a defendant could be held criminally liable under 31 U.S.C. § 5324 only if the defendant "acted with knowledge that his conduct was unlawful." *Ratzlaf*, 510 U.S. at 137.  To reach this conclusion, the Supreme Court looked to 31 U.S.C. § 5322(a) (1992), which described penalties for "willful[]" violations of the subchapter, including § 5324.  *See Ratzlaf*, 510 U.S. at 139-41. Soon after *Ratzlaf* was decided, however, "Congress amended § 5324 by giving it its own criminal penalty provision so that reliance on § 5322 is no longer necessary.  This new provision does not include a separate requirement that the defendant act "willfully" to be convicted. *United States v. Vazquez*, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995); *see* Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103–325, § 411, 108 Stat. 2160, 2253 (codified as amended at 12 U.S.C. §§ 93, 1464, 1772d, 1786, 1818, 1821; 18 U.S.C. § 984, 986, 1956; 31 U.S.C. §§ 5321(a)(4)(A), 5322(a), (b), 5324(c)).

involve transactions that were accompanied by other evidence of intent to evade the reporting requirements in addition to the transactions themselves.  *See* 1 John K. Villa, Banking Crimes: Fraud, Money Laundering & Embezzlement § 6:57 n.13 (2015) (collecting cases).  However, in *United States v. MacPherson*, we held that "a pattern of structured transactions . . . may, *by itself*, permit a rational jury to infer that a defendant had knowledge of and the intent to evade currency reporting requirements."  424 F.3d at 195 (emphasis added); *see also United States v. Nersesian*, 824 F.2d 1294, 1309, 1314-15 (2d Cir. 1987) (finding intent to cause the currency transaction reporting requirements to be violated where a defendant and his co-conspirators used $117,000 in cash to purchase more than seventy $1,000 money orders at numerous banks throughout New York City over a one-month period).  In *MacPherson*, the defendant "chose to deposit a quarter-million dollars through a series of thirty-two small transactions all under $10,000" with "twenty-three deposits [made]

28

in amounts of $9,000-$9,200" at multiple different banks over a short period of time. 424 F.3d at 191. The evidence showed that "the cash was a long-held asset that [the defendant] had shielded for some years from a possible tort judgment," which — following settlement of the tort case — the defendant "deliberately decided not to deposit . . . in one lump sum," but rather through "the more burdensome technique of thirty-two separate transactions, no one of which exceeded $10,000." *Id.* We concluded that the defendant's "willingness to sacrifice efficiency and convenience in depositing a quarter-million dollars through multiple small transactions structured to ensure that no one exceeded $10,000," *id.*, made it "unlikely, to the point of absurdity, that it was pure coincidence" that the defendant was innocently and inadvertently making separate deposits. *Id.* (quoting *United States v. Cassano*, 372 F.3d 868, 879 (7th Cir. 2004), *vacated on other grounds,* 543 U.S. 1109 (2005)).

Other Courts of Appeals have called upon similar logic in

upholding certain structuring convictions. *See United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008) (noting that "[t]he sheer volume of the transactions almost compels the conclusion reached by the jury" that the defendant engaged in illegal transaction structuring and that "[t]he fact that [the defendant] was willing to sacrifice efficiency and convenience and pay[] the exorbitant transaction fees by going to separate banks in the same day to make almost identical deposits supports the inference that he knew of and intended to avoid the reporting requirements"); *United States v. Gibbons*, 968 F.2d 639, 644-45 (8th Cir. 1992) ("Not until the bank informed Gibbons that currency transactions exceeding $10,000 had to be reported did Gibbons request the bank to issue six checks, each for less than $10,000, in place of the single check for more than $52,000 he originally requested. . . . Since the receipt and cashing of six checks would have been less efficient and convenient than receiving and cashing one, it is difficult to explain this change except

that Gibbons sought to evade the reporting requirements.").

In this case, the Government presented evidence at trial that, on seven occasions over a twenty-month period, Taylor made multiple separate cash deposits totaling over $10,000 at the same time at the same credit union branch office. No evidence of intent other than the bank transactions was presented. Rather, the Government contends that these represent a pattern of structured transactions demonstrating Taylor's intent to evade the currency reporting requirements.

Based on our review of the record, however, we must conclude that no rational jury could reach such a conclusion. First, the Government never argued at trial and presented no evidence that Taylor believed that CTRs would not have been generated for split deposits. Gallardo testified that the policy of Erie Metro was that tellers were to file a CTR when customers made either a single deposit of more than $10,000 or a split deposit that totaled over

31

$10,000, even if those deposits were made into two separate accounts.[12] Gallardo also testified that tellers were to inform customers of the CTR filing requirement. Although Gallardo conceded that he was not present during any of the conversations that Taylor had with the tellers when he made his transactions, the Government never argued, and there was no basis for the jury to conclude, that the tellers who processed Taylor's transactions did not follow Erie Metro's policies.

Second, no evidence was presented at trial that Taylor had any reason to believe that CTRs were *not* filed for the seven "split" transactions. To the contrary, Gallardo testified that whether or not a form was filed would not necessarily be known by a customer, as no action is required by the customer concerning the filing of the form, and the teller could file a CTR even if he or she had not

---

[12] Two of the seven structuring counts concerned "split" deposits made to the same account, while five counts concerned deposits made to the personal and business accounts.

complied with the bank policy of informing the customer about the bank's need to do so. Indeed, there was no evidence as to whether CTRs were or were not filed for the seven "split" transactions at issue, or whether they *were* filed for any of Taylor's many single cash deposits of over $10,000; no records of CTRs were submitted into evidence.[13]

Third, the evidence in the record does not otherwise evince intent to evade the reporting requirements through Taylor's making the seven "split deposits." In reviewing the sufficiency of the evidence, we consider the evidence "in its totality, not in isolation." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (quoting *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008)). Gallardo's testimony and the credit union's records showed that Taylor made multiple single deposits exceeding $10,000 during the same period

---

[13] Special Agent Turri testified that CTRs should have been filed for all the "split" transactions in Counts Two through Eight, even though some of the deposits were made to different accounts.

in which Taylor was supposedly structuring transactions to avoid CTR filings. As summarized in the second table above, the evidence showed that Taylor deposited amounts over $10,000 in single transactions often only days before and after he was allegedly trying to avoid CTRs being filed by making split deposits. For example, the Government contends that Taylor structured transactions on March 4 and March 7, 2008, but Taylor deposited $14,500 in a single account only three days later, on March 10. About a week after that, on March 19, Taylor deposited $10,100, a mere $100 *above* the threshold needed to trigger a CTR, in a single transaction. Similarly, the Government contends that Taylor structured a transaction on May 9, 2008. Yet Taylor deposited $15,000 on May 13 and made another deposit of $10,100 on May 27, again only $100 over the CTR threshold. The Government also claims that Taylor structured a transaction on June 24, 2008, even though four days prior, on June 20, Taylor deposited $14,557 into this account, and three days later,

34

on June 27, Taylor deposited $15,950. Indeed, there are more than twice as many instances in which Taylor made deposits exceeding $10,000 than instances in which he purportedly split his transactions for the purpose of avoiding the reporting requirements.[14]

Thus, this case is unlike *MacPherson*. There was no evidence that Taylor's deposits on the dates of the alleged structured transactions were part of a single lump sum that was split into multiple deposits. With respect to the seven purportedly structured transactions, Taylor presented every pair of deposits to a single teller at a single branch of Erie Metro, generally within seconds or minutes of each other — not to different banks on the same day or on multiple days close in time to one another, as the defendant in *MacPherson* did. As Taylor queries, "[w]ho would believe that someone seeking to evade the reporting requirement would present the paired deposits . . . to the same teller virtually simultaneously?"

---

[14] Furthermore, the last claimed structuring deposit in November 2009 occurred more than a year after the next most recent structuring deposit.

Appellant Br. 20. Moreover, D.T. Liquor was a cash business that routinely dealt in large amounts of cash, and Taylor made separate deposits on multiple occasions — sometimes totaling less than $10,000, sometimes exceeding $10,000 — which were often immediately used to pay business and personal expenses such as insurance and telephone bills. Finally, as discussed above, there were seventeen instances in the same time period in which Taylor made single deposits exceeding $10,000.[15]

The evidence was insufficient for the jury to conclude that Taylor's transactions constitute "a pattern of structured transactions" intended to evade currency reporting requirements. *MacPherson*, 424 F.3d at 195. A pattern necessarily implies *consistent* behavior, which would allow a rational jury to infer beyond a reasonable doubt that the behavior is not coincidence but rather

---

[15] The Government contended at oral argument that it could be that the deposits exceeding $10,000 were related to legitimate business at D.T. Liquor, but that the seven structured transactions derived from illegal drug proceeds. However, the Government did not present this theory as to the distinction between the types of deposits to the jury at trial, or in its brief on appeal.

demonstrates the defendant's intent to evade the reporting requirements. No jury could reasonably conclude that such a pattern existed here. Taylor's convictions on the transaction structuring counts are thus vacated.

We remand, though, for resentencing on the affirmed conspiracy conviction. Generally, there is "no need . . . for remanding to the district court for the purpose of reconsidering [a] concurrent" sentence on a conviction we have affirmed if "we are quite sure that the conviction on the reversed count could not have affected the concurrent sentences," *United States v. Ruffin*, 575 F.2d 346, 361-62 (2d Cir. 1978). Here, however, the district court took the "currency that was the subject of the currency structuring [c]ounts" into consideration when imposing a sentence on the conspiracy count. District Ct. Docket No. 320, at 8-9. Thus, we cannot say that the vacated counts did not affect the sentence imposed on the drug conspiracy count.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of conviction as to the conspiracy to distribute and possess with intent to distribute a controlled substance count, **VACATE** the judgment of conviction as to the transaction structuring counts, and **REMAND** for resentencing on the remaining count of conviction.