UNITED STATES of America, Appellee,

v.

Roberto VAZQUEZ, Defendant,

Rafael Peralta, aka Juan Martinez, aka "Pichardo," Defendant–Appellant.

No. 401, Docket 96–1163.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1996.

Decided May 19, 1997.

---

James E. Neuman, New York City (Harvey Fishbein, New York City, of counsel), for Defendant–Appellant.

Ira M. Feinberg, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Jeremy H. Temkin, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: OAKES, CARDAMONE, and MAHONEY *, Circuit Judges.

CARDAMONE, Circuit Judge:

Defendant Rafael Peralta appeals from a judgment of conviction entered on March 8,

---

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. See Local Rule § 0.14(b).

1996 after a jury trial in the United States District Court for the Southern District of New York before Judge Robert P. Patterson. Peralta was convicted of conspiring to distribute and possess with intent to distribute heroin and distributing and possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 846.

On appeal, defendant contends first that his request for a multiple conspiracy jury instruction was improperly denied. His second and principal contention is that the district court erred in enhancing his sentence pursuant to Sentencing Guidelines § 2J1.7. That section increases by three levels the offense level of a person convicted of a federal crime while on release for another federal crime. Defendant challenges the enhancement on the ground that he was not given adequate notice at the time of his release that the enhancement was mandatory. Quite the contrary. Common sense, if not conscience, tells a person that if he commits a federal crime while on release from conviction for another federal crime there will be negative consequences. Moreover, at the time of his release defendant also received a sufficient warning regarding the nature of those consequences. We affirm.

## I BACKGROUND

On August 2, 1994 a confidential informant known as "Tony" brought a small sample of heroin to Special Agent Kleczkowski of the United States Drug Enforcement Agency (DEA). Tony told Kleczkowski that a dealer named "Pichardo" had supplied it. Later that day New York City Police Detective Ramirez arranged for Tony to use a monitored telephone line to call a pool hall owned by defendant Peralta. When Peralta answered and identified himself as Pichardo, Tony complained that the heroin sample he had received that morning was "weak." Peralta assured him that he would soon have another type of heroin available, and Tony said that he had a friend who was interested in purchasing up to 725 grams. Peralta then passed the phone to a man named "Judy" and as Tony repeated his complaints about the quality of the heroin sample to Judy, he could hear Peralta in the background telling him to have Tony come to the pool hall later that day to buy heroin from a shipment expected that afternoon. Although Tony declined to come that day, he said he might be able to make a deal the following day.

The next day, August 3, Tony called Judy, who informed him that Peralta had obtained some Chinese heroin. Tony then called Peralta who confirmed this and assured him that the new sample would be better quality than the earlier one. They agreed to meet later that day. That afternoon, Tony went to the pool hall, where Peralta gave him a sample containing .09 grams of heroin. Tony called Vazquez at the pool hall later that night and told him that the Chinese heroin Peralta had given him was "very, very good," but that a larger transaction would have to be delayed because his buyer had left town to take care of other business. Vazquez complained that his suppliers would take the heroin back if the deal was delayed, and pressed Tony to complete the transaction that day. Tony explained that he did not know when his friend would return, but that he would call Vazquez when he was ready to make a deal. Vazquez then put Peralta on the telephone, and Tony had a similar conversation with him. Tony and Peralta spoke again briefly on August 4.

Almost three weeks later, on August 22, Tony called Peralta at home and informed him that his friend was back in town and was interested in buying 125 grams. The next day, Tony brought Detective Ramirez, wearing a concealed recording device, to the pool hall and introduced him as "Sam," while DEA agents maintained video surveillance outside. Tony, Ramirez and Peralta moved into a back room and began to discuss whether to make the exchange of cash for heroin inside the pool hall or outside. During this conversation, Vazquez entered the room and handed a clear plastic bag to Detective Ramirez. Vazquez said the bag contained 125 grams of "the Chinese," but when Peralta told him that Ramirez did not have the money with him, Vazquez took the bag and left the room.

Detective Ramirez then contacted DEA Agent Joseph, who drove to the pool hall and parked outside. Detective Ramirez told Per-

alta that Joseph had the money, and Peralta paged Vazquez. While they waited for Vazquez to arrive, Peralta told Ramirez he had several types of heroin available at different prices. Vazquez entered the room a few minutes later and again showed Ramirez the plastic bag. Peralta, Ramirez and Vazquez agreed that the exchange would take place in the doorway of the pool hall, and Ramirez summoned Agent Joseph to the doorway. Joseph handed Vazquez a bag containing $15,000 in cash in exchange for the plastic bag that held approximately 125 grams of heroin. At Peralta's request, Vazquez counted the money while Peralta and Ramirez discussed future deals.

Two months later, on October 26, 1994, Peralta was arrested near the pool hall. He and Vazquez were later indicted on the substantive count of distributing and possessing heroin and a conspiracy count for the same offense. Vazquez pled guilty to both counts. Peralta stood trial before a jury.

At trial, the government's evidence included the testimony of Agent Kleczkowski and Detective Ramirez, video tapes of the events that occurred outside the pool hall on August 22, and audio tapes of Detective Ramirez's conversation with Peralta during the heroin purchase and Tony's telephone conversations with Vazquez, Judy and Peralta on August 3, 4, 22 and 23. The defendant did not testify and called no witnesses. Instead, he offered excerpts of Vazquez's plea allocutions. During his first allocution, Vazquez had stated that Peralta was not involved in the drug sale on August 23, although he conceded that Peralta had discussed the transaction with Ramirez. But Vazquez maintained that Peralta had not supplied the heroin or received any money for it. Vazquez's initial guilty plea was rejected because the court was concerned that the facts he admitted to might establish an entrapment defense. At a second plea allocution Vazquez said that Tony, the government informant, had supplied him with the drugs for the August 23 deal and had directed the transaction and paid Vazquez $600 for his participation. In rebuttal, the government submitted an audio tape of a conversation between Tony and Vazquez on September 28, 1994. In that conversa-

tion, Tony complained that the heroin Vazquez had produced for "Sammy" was "garbage"; Vazquez apologized and promised that he would soon have better quality heroin available to sell to Sam.

The jury convicted Peralta on both heroin counts on April 14, 1995. At sentencing, the district court imposed a three-level enhancement to Peralta's base offense level pursuant to Sentencing Guidelines § 2J1.7 and 18 U.S.C. § 3147 because the drug transaction for which Peralta was convicted occurred while he was released on bail pending sentencing for an unrelated offense. The district court sentenced defendant to 97 months imprisonment, followed by five years of supervised release and a special assessment of $100.

## II DISCUSSION

### 1. Multiple Conspiracy Jury Instruction

 Appellant urges that the district court erred in denying his request for a multiple conspiracy jury instruction. A criminal defendant is entitled to a jury instruction reflecting his defense theory "for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." United States v. Dove, 916 F.2d 41, 47 (2d Cir.1990). If the evidence at trial supports an inference that there was more than one conspiracy, then, whether multiple conspiracies existed is a question of fact for the jury. United States v. Maldonado–Rivera, 922 F.2d 934, 962 (2d Cir.1990).

 In order to secure a reversal on the ground that the court failed to give a multiple conspiracy charge, a defendant must prove there were two or more groups operating separately from one another, although membership in the groups might overlap, United States v. Thompson, 76 F.3d 442, 454 (2d Cir.1996), and that failure to give the requested charge prejudiced defendant. A refusal to give a multiple conspiracy charge does not prejudice defendant where there was ample proof before the jury for it to find beyond a reasonable doubt that defendant was a member of the conspiracy charged in the indictment. See id.; United States v. Barlin, 686 F.2d 81, 89 (2d Cir.1982). Appel-

lant has failed to persuade us either that he was entitled to a multiple conspiracy charge or that he was prejudiced by the court's refusal to give such a charge.

■ Peralta maintains the theory of his defense was that the August 2–3 "sample" transactions were entirely separate and distinct from the August 23 sale of 125 grams of heroin. He concedes he was a participant in the first transactions, but insists Vazquez's plea allocution testimony establishes he was not involved in the larger sale several weeks later. We are unable to accept this argument. Even if Vazquez's testimony that Peralta was merely present at the 125–gram transaction is accepted as true, the evidence nonetheless demonstrates that Peralta's earlier sales of "samples" were related to the later, larger heroin transaction. Where there is sufficient proof of an ongoing connection between transactions, one conspiracy is not transformed into multiple conspiracies simply because it occurs in more than one stage and at different times. *Maldonado–Rivera*, 922 F.2d at 963 ("[L]apses of time, changes in membership, [and] shifting emphases in the locale of operations [do not] necessarily convert a single conspiracy into multiple conspiracies."); *see. also United States v. Tramunti*, 513 F.2d 1087, 1106 (2d Cir.1975); *United States v. Martino*, 664 F.2d 860, 876–77 (2d Cir.1981); *United States v. Vila*, 599 F.2d 21, 24 (2d Cir.1979).

Several of the government's witnesses testified that a large drug transaction between unfamiliar parties is often preceded by a "sample" transaction. The taped conversations submitted at trial support the government's claim that the sales on August 2 and 3 were such transactions, and that their function was to establish the quality of the heroin so that Sam, the buyer, would make a second, more sizeable purchase. The ultimate object of the conspiracy was therefore the sale of a substantial quantity of heroin. Having actively participated in the conspirators' first step toward that goal, Peralta was a member of the conspiracy and, absent evidence of his withdrawal, he is responsible for all subsequent acts in furtherance of that conspiracy. Neither the lapse of time between the sample transactions and the August 23 sale, nor the extent of Peralta's participation in the August 23 heroin sale, is sufficient to establish that there were separate networks or groups operating independently of each other.

■ In addition, if we follow Peralta's argument that he was not involved in the August 23 transaction to its logical end, no separate conspiracy could have existed with regard to that transaction. It is well-established that an agreement to conspire may come into being only when at least two culpable coconspirators agree. A person who enters into such an agreement while acting as an agent of the government, either directly or as a confidential informant, lacks the criminal intent necessary to render him a *bona fide* co-conspirator. *See, e.g., United States v. Hendrickson*, 26 F.3d 321, 333 (2d Cir. 1994). Assuming for the moment that we accept Vazquez's testimony that the transactions were not part of the same scheme, the alleged second conspiracy involved, at most, three parties—Tony, Sam (Detective Ramirez), and Vazquez. As Tony and Detective Ramirez were clearly acting as government agents, Vazquez would have been the sole culpable participant in the August 23 sale. Thus, as Judge Patterson observed, Peralta's evidence may have supported an inference that there was no conspiracy with regard to the August 23 sale, but that proof could not establish that there was more than one conspiracy. Peralta was not therefore entitled to a multiple conspiracy jury charge. *See Martino*, 664 F.2d at 875 ("[I]f only one conspiracy has been alleged and proved the defendants are not entitled to a multiple conspiracy charge."); *see also United States v. Ocampo*, 650 F.2d 421, 429–30 (2d Cir. 1981); *United States v. Cambindo Valencia*, 609 F.2d 603, 621 n. 15 (2d Cir.1979).

■ Nor has Peralta demonstrated he was prejudiced by the refusal to give the requested.charge. A trial court's refusal to give a requested jury charge does not prejudice the defendant where the evidence is sufficient to allow the jury to find beyond a reasonable doubt that the defendant was a member of the single conspiracy alleged. *Thompson*, 76 F.3d at 454. The evidence against appellant, largely in the form of

388

taped conversations between him and his co-conspirators, and viewed in a light most favorable to the government, amply supported the jury's finding of Peralta's membership in a single conspiracy to distribute 125 grams of heroin. Appellant therefore has shown no prejudice from the charge as given.

### 2. *Notice requirement under 18 U.S.C. § 3147*

■ In December 1993, approximately eight months before the two heroin transactions took place, Peralta was arrested on an unrelated charge of sale of counterfeit currency. When released on bail the day after his arrest, he signed a document entitled "Warning Concerning Penalties and Sanctions" (Warning) that advised him of the conditions of his release, the penalties for violation of those conditions, and the penalties for committing further offenses while on release. Appellant pled guilty to the counterfeiting charge on June 27, 1994, but remained free on bail pending his sentencing. The heroin transactions at issue on this appeal occurred while Peralta was awaiting sentencing for his counterfeiting conviction.

Under 18 U.S.C. § 3147,

A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—

(1) a term of imprisonment of not more than ten years if the offense is a felony; or

(2) a term of imprisonment of not more than one year if the offense is a misdemeanor.

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

The mandatory sentence provision of § 3147 is implemented by Sentencing Guidelines § 2J1.7, which requires the sentencing court to add three levels to the offense level of a defendant convicted of a crime committed while the defendant was on release. The district court, noting that Peralta was on release during the August heroin transactions, applied Guidelines § 2J1.7 to raise his offense level from 26 to 29.

Appellant urges that this sentencing enhancement was improper because he was not given adequate notice at the time of his release, pursuant to 18 U.S.C. § 3142, that he would be subject to a mandatory enhancement if he committed an offense while on release. Section 3142(h) provides that a release order shall include "a written statement that sets forth all the conditions to which the release is subject, ... and ... [shall] advise the person [released] of ... the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release." The Bail Reform Act contains separate provisions for defendants released pending trial, *see* 18 U.S.C. § 3142, and those who, like Peralta, are released pending sentencing or appeal, *see* § 3143. Section 3143 states that once it has been determined that a convicted defendant is eligible for release pending sentencing, his release shall be ordered in accordance with § 3142.

We have not yet had occasion to determine whether notice at the time of release is a prerequisite to application of Guidelines § 2J1.7. Of those circuits that have addressed this question, the Fourth, Fifth, and Seventh have held that failure to give notice of the mandatory enhancement provision of § 3147 at the time of release bars later application of § 2J1.7, *see United States v. Onick,* 889 F.2d 1425, 1433 (5th Cir.1989); *United States v. DiCaro,* 852 F.2d 259, 264–65 (7th Cir.1988); *United States v. Cooper,* 827 F.2d 991, 994–95 (4th Cir.1987), while the Third and Sixth Circuits have held that such notice is not required, *see United States v. Lewis,* 991 F.2d 322, 323–24 (6th Cir.1993); *United States v. DiPasquale,* 864 F.2d 271, 281 (3d Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

Peralta contends that the commentary to § 2J1.7, which states that "[a]n enhancement under 18 U.S.C. § 3147 may be imposed only after sufficient notice to the defendant by the government or the court ...," U.S.S.G. § 2J1.7 comment. (backg'd), supports his argument that notice is required at the time of release. We note, however, that prior to November 1, 1989 the commentary stated that "[a]n enhancement under 18 U.S.C.

§ 3147 may be imposed only upon application of the government; it cannot be imposed on the court's own motion." U.S.S.G.App. C, amend. 431. The language of the earlier version of the commentary suggests only that the defendant must receive notice prior to sentencing of the possibility of an enhancement under § 3147. *Cf. United States v. Browning*, 61 F.3d 752, 756 (10th Cir.1995) (finding notice adequate where defendant's only notice of possible enhancement was through presentence report, because "§ 3147 is strictly a sentencing enhancement provision").

Both § 3147 and § 3142 are silent as to whether compliance with the notice requirement of § 3142 is a prerequisite to imposition of the enhanced sentence under § 3147. Peralta declares that the legislative history of § 3147 indicates that it was not Congress' plan to have courts apply the statute to defendants who had not received notice of its mandatory provisions at the time of their release. Sections 3147 and 3142 were adopted with the 1984 amendments to the Bail Reform Act, which were modeled on the Washington, D.C. Release and Detention statute. That statute included a provision requiring that released defendants be informed of the enhanced penalties if convicted of a crime committed while released. *See* D.C.Code Ann. §§ 23–1321 *et seq.*; *see also Onick*, 889 F.2d at 1434. The D.C. statute specifically stated that "[t]he giving of a warning to the person when released of the penalties imposed by this section shall not be a prerequisite to the application of this section." D.C.Code Ann. § 23–1328(b).

Peralta urges us to follow the Fourth, Fifth, and Seventh Circuits that have construed Congress' failure to adopt similar language as a deliberate omission that "suggests that Congress intended to require notification upon release before a judge may apply the penalties listed in Section 3147." *Onick*, 889 F.2d at 1434; *see also DiCaro*, 852 F.2d at 265 ("[W]e will not hold that Congress's 'omission to make [§ 3142(h)(2)(A) ] warnings advisory for § 3147 was ... a result of oversight.' ") (quoting *Cooper*, 827 F.2d at 994) (alterations in *DiCaro* ).

The Fourth Circuit posited in *Cooper* that the legislative history of § 3142 supports this interpretation of Congress' intent in excluding language from the D.C. statute. 827 F.2d at 995. In a Senate Report discussing the release order provisions of § 3142, the Committee stated that

failure to [advise the releasee of the penalties applicable to a violation of the conditions of release] is not a bar or defense to prosecution for bail jumping under section 3146.... This principle is in keeping with the intent of Congress in enacting the Bail Reform Act and the judicial interpretation of the Act. The purpose of such advice is solely to impress upon the person the seriousness of failing to appear when required.... Subsection (h) also requires the court to advise a defendant being released of the provisions of 18 U.S.C. 1503, 1510, 1512, and 1513 dealing with penalties for tampering with a witness, victim, or informant. This is intended to impress on the defendant the seriousness of such conduct. The issuance of such a warning is not a prerequisite to a prosecution under these section of title 18 designed to protect witnesses, victims, and informants.

S.Rep. No. 98–225, at 25 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3208. *Cooper* reasoned that by failing to include § 3147 among the other provisions of the Bail Reform Act that are specifically exempted from the notice requirement of § 3142, the Senate Report suggests that Congress meant failure to comply with the notice requirements of § 3142 to bar application of § 3147. *See* 827 F.2d at 995. *Cooper, Onick,* and *DiCaro* each concluded that the rule of lenity required that the ambiguity created by Congress' silence as to the effect of failure to comply with § 3142 be resolved in favor of defendants.

Noting that § 3147 requires the imposition of an additional, consecutive sentence, the Third Circuit criticized *Cooper* for turning unnecessarily to legislative history rather than simply reading and implementing a clearly worded statute. *DiPasquale*, 864 F.2d at 281. *DiPasquale*, and later *Lewis*, ruled that § 3147 "is a self-executing and mandatory provision of law, addressed by

Congress to sentencing courts," and that *Cooper*'s rationale "read[ ] too much into what was not said by the legislative history and ... too little of what was said by the statute itself." *Id.*; *Lewis*, 991 F.2d at 324.

Addressing the legislative history cited in *Cooper*, these courts determined that the Senate Report actually supported a finding that notice was not required prior to application of § 3147. *DiPasquale*, 864 F.2d at 281; *see also Lewis*, 991 F.2d at 324. Focusing on the Committee's statement that the purpose of the Act was to "impress upon the [defendant] the seriousness of [certain] conduct," they reasoned that the specific mention of witness tampering and bail jumping simply emphasized that § 3142 would not bar the prosecution of criminal conduct committed by a defendant on release.

Although we are inclined to agree with the judgment of the Third and Sixth Circuits that it would be inconsistent with the overall scheme of the Bail Reform Act to allow defendants who commit the offenses that the act is intended to deter to avoid punishment for those crimes because of the judicial officer's failure explicitly to remind the defendant of the potentially enhanced penalties for his or her criminal acts, we need not conclusively resolve this issue on these facts.

Assuming, *arguendo*, that notice is required, the notice Peralta received was unquestionably adequate. Section 3142 requires that the statement of the conditions of release and penalties for violating those conditions be set forth "in a manner sufficiently clear and specific to serve as a guide for the [defendant's] conduct." 18 U.S.C. § 3142(h). The Warning signed by Peralta at the time of his release included the following language:

> If the defendant commits a crime while released in this pending case, the result could be, once his guilt for said crime is established, the imposition of a mandatory sentence to run consecutive to any sentence imposed for the original crime....

Peralta argues that the phrase "could be" renders the Warning insufficient to put him on notice that the sentence enhancement was mandatory under § 3147. The government points out that the permissive language is necessary because § 3147 does not apply to defendants who are convicted of a state, rather than federal, crime committed while on release.

Of the circuits that have held that notice at the time of release is required, only two appear to have considered similar permissive language, and both found the notice given to be adequate. *See United States v. Kincaid*, 964 F.2d 325, 329 (4th Cir.1992) (finding adequate notice where magistrate orally warned defendant that "should [he] commit any crime while on release, there are minimum mandatory as well as increased maximum penalties that *may* apply.") (emphasis added); *United States v. Sturman*, 49 F.3d 1275, 1283 (7th Cir.1995) (notice that "a felony conviction ... *could result* in [defendant's] sentence being increased from anywhere between two and ten years" was adequate) (emphasis added). Moreover, the Warning signed by Peralta described the penalty that could be imposed as a "mandatory" consecutive sentence, which should have put him on notice that there were at least some circumstances under which commission of an offense while on release would undoubtedly result in such a penalty. *Cf. United States v. Pico*, 2 F.3d 472, 475 (2d Cir.1993).

Appellant relies on *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir.1994), for the proposition that due process prohibits forfeiture of a defendant's liberty because he violated the conditions of his probation, absent a fair warning that particular conduct will constitute a violation. But what was at issue in *Gallo* was defendant's refusal to submit to regular psychiatric care, conduct not in itself criminal, but required as a condition of his probation. *See* 20 F.3d at 12. Section 3147 is distinguishable. It does not criminalize otherwise legal conduct, but provides an enhanced penalty for criminal conduct already punishable by a term of imprisonment. Further, if Peralta was in doubt regarding the circumstances under which the enhancement would be mandatory, he could have consulted the statute itself, which gives clear notice of the nature of the enhancement.

We are persuaded that the Warning provided adequate notice that further criminal

conduct could result in an increased term of imprisonment, and that such notice satisfied the specificity of notice requirement of § 3142(h).

## CONCLUSION

Accordingly, the judgment is affirmed.