23-6031(L)
*United States v. Wiley, Watson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of March, two thousand twenty-five.

Present:

> GERARD E. LYNCH,
> EUNICE C. LEE,
> MYRNA PÉREZ,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

        *Appellee*,

    v.

TAJH WILEY, JEVAUGHN WATSON,

        *Defendants-Appellants*.[*]

Nos. 23-6031
23-6518

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Appellee:                                    ROBERT S. DEARINGTON
                                                 (Patrick J. Doherty, Conor M.
                                                 Reardon *on the brief*),
                                                 Assistant United States
                                                 Attorneys *for* Vanessa
                                                 Roberts Avery, United States
                                                 Attorney, District of
                                                 Connecticut, New Haven,
                                                 CT.

For Defendant-Appellant Wiley:                   ROBERT A. CULP, Law Office
                                                 of Robert A. Culp, Garrison,
                                                 NY.

For Defendant-Appellant Watson:                  JONATHAN J. EINHORN, Law
                                                 Office of Jonathan J.
                                                 Einhorn, New Haven, CT.


Appeal from judgments of conviction entered against Tajh Wiley and Jevaughn Watson on January 6, 2023 and May 15, 2023, respectively, in the United States District Court for the District of Connecticut (Arterton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction are **AFFIRMED**.

Defendant-Appellant Tajh Wiley appeals from the district court's judgment convicting him of: (1) conspiracy to distribute and possess with intent to distribute controlled substances, namely 500 grams or more of cocaine and unspecified amounts of fentanyl and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846, and (2) possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and sentencing him principally to 144 months' imprisonment. Defendant-Appellant Jevaughn Watson appeals from the district court's judgment convicting him of conspiracy to distribute and possess with intent to distribute a controlled substance, namely an unspecified amount of

marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846, and sentencing him principally to 44 months' imprisonment.

Wiley and Watson were indicted and convicted following a federal investigation of a drug trafficking organization that centered on Wiley and operated in and around Hartford and Bridgeport, Connecticut, between 2018 and 2021. At trial, Wiley conceded that he trafficked in marijuana and limited amounts of cocaine, but disputed the broad conspiracy alleged by the government and denied any fentanyl dealing. Watson argued that he was not a member of the charged conspiracy.

On appeal, the defendants-appellants challenge the admission of various evidence at trial, the sufficiency of the trial evidence, the jury instructions and verdict form, the calculation of drug quantity, the application of various sentencing enhancements, and the order requiring forfeiture of Wiley's diamond-encrusted watch.

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

## I.    Evidentiary Issues

Wiley contends that he was denied a fair trial based on the district court's admission of: (1) evidence of his 2021 arrest for possession of cocaine in Yonkers, New York; and (2) statements by four co-defendants and another alleged co-conspirator under the co-conspirator exception to the hearsay rule.

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard and will disturb its rulings only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021) (internal

3

quotation marks omitted).

### A. The Yonkers Arrest

On February 9, 2021, police stopped Wiley in his Range Rover in Yonkers, New York. Wiley admitted to police that he had a kilogram of cocaine in the car, which was destined for sale in Stamford, Connecticut. The officers seized a bag that later tested positive for cocaine.

Wiley argues that evidence of his Yonkers arrest should not have been admitted at trial because: (1) it was irrelevant, since no evidence connected the arrest to the charged conspiracy in Connecticut; and (2) its admission constituted prohibited propensity evidence in violation of Federal Rule of Evidence 404(b). We disagree.

"When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Therefore, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). Here, although the contested evidence stemmed from an arrest that occurred outside of Connecticut, Wiley was found in possession of a kilogram of cocaine (a drug implicated in the charged conspiracy) during the period of the charged conspiracy, and he admitted that the cocaine was destined for sale in Stamford, Connecticut (a locus of the conspiracy). Based on these facts, the district court did not abuse its discretion in determining that the Yonkers arrest was admissible as direct evidence of the charged conspiracy.

### B. Co-Conspirator Statements

At trial, the district court also admitted several different categories of out-of-court

4

statements under the co-conspirator exception, including: (1) recorded jail calls between Wiley and co-defendants Destiny Wade and Kenston Harry, in which Wiley informed them of his arrest in Yonkers, instructed Harry on how to carry on the business in his absence, and directed Wade to buy a prepaid cell phone and rent a car in advance of his release; (2) statements by Al Springfield, an uncharged alleged co-conspirator, on recorded calls with Wiley, discussing drug prices and transactions; and (3) statements by co-defendants Peter Munoz and Myron Brown on recorded calls with Wiley, discussing drug preparation and transactions.

Wiley argues that the government did not demonstrate that the alleged co-conspirators had "knowledge of the overall contours of the charged conspiracy" and therefore failed to establish them as co-conspirators. Wiley Br. at 63–64. We disagree.

A statement is not hearsay if "[t]he statement is offered against an opposing party" and it is a statement "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

As a preliminary matter, because Wiley did not challenge the admission of statements by Wade, Harry, Munoz, and Brown below, our review as to those statements is for plain error.[1] *See*

---

[1] The parties dispute whether Wiley objected below to the introduction of jail calls including statements by Wade and Harry. Although Wiley contends that his objection to the Yonkers arrest implicitly included an objection to the recorded jail calls with Wade and Harry, that general objection was insufficient to constitute

5

*United States v. Boyland*, 862 F.3d 279, 288-89 (2d Cir. 2017) (explaining that we review a district court's unpreserved evidentiary rulings for plain error). Each of those four individuals was an indicted co-defendant, who was shown to have engaged in drug or financial transactions with Wiley during the period of the charged conspiracy. Thus, admission of their statements under Rule 801(d)(2)(E) did not constitute plain error.

The district court also correctly admitted Springfield's statements. Before doing so, the court engaged in a thoughtful analysis under *Bourjaily*, explaining that Springfield "sounded as if he knew about Mr. Wiley's business" and "was seeking to, even if peripherally, participate in it." Wiley App'x at 149. The court ultimately concluded that Springfield's statements were "within the course of the conspiracy, . . . that the nature of the [statements] and the discussions seemed to acknowledge . . . the conspiracy," and that the statements were made "in furtherance of [the conspiracy]." *Id.* On this record, the district court's admission of Springfield's statements under Rule 801(d)(2)(E) was not an abuse of discretion.

## II. Sufficiency of the Evidence

Both Wiley and Watson challenge the sufficiency of the evidence supporting their convictions. Wiley argues that the government failed to adduce sufficient evidence to prove that he conspired to distribute an indeterminate quantity of fentanyl or 500 grams or more of cocaine. Watson argues that there was insufficient evidence of his involvement in the charged marijuana conspiracy.

We review the sufficiency of the evidence *de novo*. *United States v. Heras*, 609 F.3d 101,

---

a challenge to the admission of the calls. Accordingly, we review the district court's admission of those statements for plain error.

6

105 (2d Cir. 2010). "A defendant seeking to overturn a jury verdict on sufficiency grounds bears a heavy burden, as we exercise an exceedingly deferential standard of review. We must uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (internal citations and quotation marks omitted). When assessing a sufficiency challenge, the trial evidence is to be considered in its totality, rather than in isolation. *Id.* Additionally, we view the evidence "in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011). These considerations are especially relevant in conspiracy cases "because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *Anderson*, 747 F.3d at 73. As a result, "[t]he government may prove the defendant's knowing participation in a conspiracy through circumstantial evidence" alone. *Id.* at 60.

At trial, the government presented extensive evidence including, *inter alia*, numerous communications between Wiley and various co-conspirators discussing narcotics transactions, preparation, and distribution; large quantities of seized cash and narcotics, including marijuana, cocaine, and fentanyl, some of which was seized from Wiley's person and property;[2] and financial records indicating that Wiley had limited reported income and no bank accounts during the period of the charged conspiracy, but that more than $190,000 was credited to his partner's account between March 2020 and June 2021, primarily through cash ATM deposits.

Both Wiley and Watson argue, however, that the government's evidence was insufficient

---

[2] Agents also found narcotics at a home owned by co-conspirator Harry, where Wiley often stayed.

to support their convictions because it could have been interpreted as establishing a series of isolated and independent drug transactions, rather than a conspiracy, and because it almost entirely comprised "circumstantial intercepts without cooperating witnesses, controlled buys or other definitive evidence." Wiley Br. at 25.

As described above, when reviewing a sufficiency-of-the-evidence claim, "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015). Under that standard, we easily conclude that, based on the voluminous evidence outlined above, a rational jury could have concluded beyond a reasonable doubt that a drug conspiracy existed and that each defendant participated in it.

## III. Jury Instructions

Both Wiley and Watson argue that the district court erred by declining to give the jury a "multiple conspiracies" instruction, which would have advised the jurors that, if the government had proved several distinct conspiracies with different objectives—as opposed to a single conspiracy—then the defendants must be acquitted. Wiley contends that the instruction was necessary because, while the government alleged "one overarching 'hub' conspiracy circularly defined" by Wiley's participation, "a fair interpretation of this evidence could also have established Wiley's involvement in multiple separate drug conspiracies." Wiley Br. at 52. The existence of multiple conspiracies was "critical" to the defense, in his view, because it might have affected the drug quantity calculation, potentially eliminating the five-year mandatory minimum applied under § 841(b)(1)(B). *Id.* Watson argues that a multiple-conspiracies instruction was necessary because, although Wiley admitted at trial the existence of a conspiracy and his

8

participation in it, Watson's defense was that he was not a member of the charged conspiracy.

"A criminal defendant is entitled to a jury instruction reflecting his defense theory 'for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court.'" *United States v. Vazquez*, 113 F.3d 383, 386 (2d Cir. 1997) (quoting *United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990)). And, "[i]f the evidence at trial supports an inference that there was more than one conspiracy, then, whether multiple conspiracies existed is a question of fact for the jury." *Id.* (citing *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990)). However, "a defendant is 'not entitled to a multiple conspiracy charge' when 'only one conspiracy has been alleged and proved.'" *United States v. Pena*, 846 F. App'x 49, 51 (2d Cir. 2021) (quoting *Maldonado-Rivera*, 922 F.2d at 962). Schemes involving "two or more phases or spheres of operation" may amount to a single conspiracy, "so long as there is sufficient proof of mutual dependence and assistance" among the conspirators. *United States v. Berger*, 224 F.3d 107, 115 (2d Cir. 2000) (internal quotation marks omitted).

We review *de novo* a properly preserved challenge to a jury instruction. For reversal to be warranted by the lack of a multiple-conspiracies instruction, a defendant must show that "there were two or more groups operating separately from one another, although membership in the groups might overlap, and that failure to give the requested charge prejudiced defendant." *Vazquez*, 113 F.3d at 386 (internal citation omitted).

This Court has repeatedly found that a conspiracy may have multiple spheres joined by a single individual (i.e., a "hub"), and in such cases, a multiple-conspiracy instruction is not necessary. *See, e.g.*, *Berger*, 224 F.3d at 115 (rejecting defendants' argument that a multiple-conspiracies charge was necessary because the charged conduct involved "multiple, separate

9

frauds . . . linked only by the happenstance of common methods of operation and the omnipresence of Chaim Berger as mastermind," and instead finding sufficient evidence that the schemes were part of an overarching conspiracy, based on common methods, overlapping participants, and interconnected goals). Moreover, "[a] trial court's refusal to give a requested jury charge does not prejudice the defendant where the evidence is sufficient to allow the jury to find beyond a reasonable doubt that the defendant was a member of the single conspiracy alleged." *Vazquez*, 113 F.3d at 387.

Here, the district court properly instructed the jury that, to convict, it must find that: (1) the charged conspiracy existed and (2) the defendant in question knowingly and willfully became a member of that conspiracy. Regardless of the defendants' assertions that multiple conspiracies existed, the trial evidence was sufficient to support the jury's finding that both defendants were members of the single charged conspiracy to distribute narcotics. Accordingly, neither Wiley nor Watson was prejudiced by the lack of a multiple-conspiracies charge. *See United States v. Thompson*, 76 F.3d 442, 454 (2d Cir. 1996) (explaining that "even if multiple conspiracies are found, the jury should convict the defendant if it finds that one of the proven conspiracies is the one alleged in the indictment and that the defendant was a member of it").

## IV. Verdict Form

Wiley was charged with conspiracy to distribute and to possess with intent to distribute 400 grams or more of a mixture containing a detectable amount of fentanyl. At the government's request, and without objection by Wiley, the district court used a verdict form that allowed the jury to make separate liability and quantity determinations for the charged narcotics conspiracies. After determining Wiley's participation in the conspiracy, the jury was instructed to indicate the

amount of fentanyl that was reasonably foreseeable to Wiley: (1) an unspecified, detectable quantity, or (2) 400 grams or more. The jury ultimately found him guilty of conspiracy to distribute an unspecified detectable quantity of fentanyl, acquitting him of the 400-grams-or-more quantity charged in the indictment. On appeal, Wiley argues that the inclusion of a lesser-included-offense instruction—consisting of the option for the jury to convict him of fentanyl conspiracy involving less than the threshold amount of 400 grams—constituted a constructive amendment of the indictment because the government did not charge or seek a fentanyl conspiracy conviction involving fewer than 400 grams of fentanyl. We disagree.

An indictment has been constructively amended "[w]hen the trial evidence or the jury charge operates to broaden[ ] the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (alterations in original) (internal quotation marks omitted). Constructive amendment is a *per se* violation of the Fifth Amendment's Grand Jury Clause, but "this court has proceeded cautiously in identifying such error, consistently permitting significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial." *United States v. Agrawal*, 726 F.3d 235, 260 (2d Cir. 2013) (internal quotation marks omitted and alteration adopted). "To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Taylor*, 816 F.3d 12, 18 (2d Cir. 2016) (internal quotation marks omitted).

Under Federal Rule of Criminal Procedure 31(c)(1), "[a] defendant may be found guilty of

11

. . . an offense necessarily included in the offense charged." In the context of drug conspiracies, this Court has approved the use of verdict forms that separate the issues of liability and quantity. *See Taylor*, 816 F.3d at 19 (finding proper "[t]he special verdict form [which] separated the issue of conspiratorial liability from quantity, expressly giving the jury the option of finding Taylor guilty of a conspiracy involving five kilograms or more of cocaine, or of the lesser included offenses of a conspiracy involving 500 grams or more or less than 500 grams").

Because Wiley did not raise this objection below, we review for plain error.[3] *Miller*, 954 F.3d at 557 (explaining that when a defendant does not timely object to the content of jury instructions, a challenge to the instructions is reviewed for plain error). We find none.

The inclusion of the lesser-included offense was not a constructive amendment of the indictment because it did not broaden the possible bases for a conviction. Wiley's offense of conviction—conspiracy to distribute and possess with intent to distribute an unspecified amount of fentanyl—is a lesser included offense of the crime charged in the indictment—conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl—because the elements of those offenses are identical except for the quantity of drugs involved. *See Taylor*, 816 F.3d at 18. "As other courts have recognized, such a conviction . . . is entirely appropriate under Federal Rule of Criminal Procedure 31(c)." *Id.* at 19. The district court therefore did not err by including the lesser-included offense on the verdict form.

## V. Sentencing

The defendants-appellants challenge several aspects of their sentences. Specifically,

---

[3] Although Wiley did challenge the phrasing of the verdict form's question regarding drug quantity at the charge conference, Wiley did not argue that the verdict form improperly directed the jury to consider a lesser-included offense.

Wiley contests the district court's drug quantity calculation and the application of the weapon and leadership enhancements. Watson challenges the application of the career-offender enhancement.

This Court reviews a district court's sentencing decisions for both substantive and procedural reasonableness. *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc); *United States v. Villafuerte*, 502 F.3d 204, 206 (2d Cir. 2007). Reasonableness review generally "amounts to review for abuse of discretion," *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014) (internal quotation marks omitted), and may require reversal when the district court's decision "cannot be located within the range of permissible decisions or is based on a legal error or clearly erroneous factual finding." *Villafuerte*, 502 F.3d at 206 (internal quotation marks omitted).

A. Drug Quantity

At sentencing, the district court "analyz[ed] all of the materials in the presentence report as well as that which was produced at trial" and found that Wiley was responsible for at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight, based on quantities of cocaine, fentanyl, and marijuana, corresponding to a base offense level of 32. Wiley App'x at 729 (finding that it was "easily more likely than not that at least 3,000 kilograms of converted drug weight . . . ha[d] been demonstrated"). On appeal, Wiley argues that the district court: (1) impermissibly considered narcotics trafficking activities of which he was either acquitted or "impliedly acquitted," Wiley Br. at 67; (2) considered seized narcotics which were not reasonably foreseeable to him or otherwise impermissibly engaged in speculation and extrapolation; and (3) adopted an erroneous conversion error included in the presentence report ("PSR").

13

In a drug trafficking conspiracy, a defendant may be sentenced based on all acts and omissions of others that were within the scope of the conspiracy, in furtherance of the conspiracy's criminal objective, and reasonably foreseeable to the defendant. U.S.S.G. § 1B1.3(a)(1)(B). In the context of drug conspiracies, "[t]he defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006). "Where there has been no seizure of narcotics, or where the quantity seized does not reflect the scale of the offense, the Guidelines require the district court to estimate the amount of drugs involved in the offense." *United States v. Blount*, 291 F.3d 201, 215 (2d Cir. 2002). "In making that estimation, a sentencing court may rely on any information it knows about, including evidence that would not be admissible at trial[.]" *United States v. McLean*, 287 F.3d 127, 133 (2d Cir. 2002) (internal citation and quotation marks omitted). "A district court's findings as to the quantity of narcotics involved in an offense are findings of fact subject to the clearly erroneous standard of review." *United States v. Prince*, 110 F.3d 921, 924 (2d Cir. 1997).

Wiley's first argument is unpersuasive because the district court expressly excluded acquitted conduct from its drug quantity calculation. *See* Wiley App'x at 729 ("The very large quantities reflected in the intercepts even with or without [the acquitted conduct] in the Court's view easily satisfies the bottom of that advisory guideline and so it will be a Level 32."). His remaining arguments, which generally propose alternative interpretations of the evidence before the district court, are similarly unavailing. The record here includes plenty of evidence— including seized narcotics, surveillance footage, and intercepted and other communications regarding drug transactions—to support the district court's conservative estimate. Accordingly,

14

the district court's drug quantity calculation was not clearly erroneous. *McLean*, 287 F.3d at 133 (in estimating the amount of drugs involved in a crime, "the district court may make credibility determinations which this Court will not disturb unless clearly erroneous" (internal quotation marks omitted)).

### B. Leadership Enhancement

Under U.S.S.G. § 3B1.1(a), a sentencing court may increase the offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Wiley suggests that the district court abused its discretion in applying the leadership enhancement because it did not make the requisite factual findings as to his role in the organization—namely, that he exercised decision-making authority and control over other members of the conspiracy.

We disagree. The district court applied the leadership enhancement based on its findings that "[t]he wiretaps . . . placed Mr. Wiley in the center [of] . . . this drug operation," "[h]e directed others on what to do with respect to acquiring, prepping, shipping and purchasing large quantities of . . . drugs," and he "handled customer requests." Wiley App'x at 730. The government submitted substantial evidence to support those findings. Given this evidence, the district court's finding that Wiley played a leadership role in the organization was not outside "the range of permissible decisions" or "based on a . . . clearly erroneous factual finding." *Villafuerte*, 502 F.3d at 206 (internal quotation marks omitted).

### C. Weapon Enhancement

Under U.S.S.G. § 2D1.1(b)(1), a sentencing court may increase the offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." Wiley challenges the

district court's application of the weapon enhancement because "no weapon was recovered from Wiley, seen in surveillance or referenced in testimony." Wiley Br. at 74. At sentencing, the district court applied the weapon enhancement based on an intercepted phone call made by Wiley in which Wiley stated, in relation to a drug dispute, "I be situated every day."[4] Wiley App'x at 729. The court concluded that "the defendant's own words" established "that he possessed a firearm in connection with his drug activities," despite the fact that guns were not recovered from his apartment. *Id.*

The weapon enhancement applies where the evidence supports an inference that the defendant possessed a weapon, whether actually or constructively via co-conspirators. *United States v. Hertular*, 562 F.3d 433, 448 (2d Cir. 2009). Therefore, the enhancement may properly be applied even where no weapon was recovered, and the district court did not abuse its discretion in concluding that Wiley's statements, in context, established by a preponderance of the evidence his possession of weapons in connection with his drug trafficking offense.[5]

### D. Career Offender

Under U.S.S.G. § 4B1.1(a) (Nov. 2021), a defendant is a career offender subject to enhanced punishment if, *inter alia*, the defendant has at least two prior felony convictions of either

---

[4] As the government argues, the context makes clear that by saying he was "situated," Wiley meant he was armed. In response to his statement about being situated, Wiley's correspondent answered that another individual did not "even own no gun." Wiley App'x at 471.

[5] The district court explained that it applied the firearm enhancement based on Wiley's "words" and the "wiretaps of his cell phone." Wiley App'x 729. Other of Wiley's statements further support that he possessed a firearm in connection with his drug trafficking offense. *See id.* at 362–63 (explaining to a co-conspirator that he would have his "grip" and that, as a result, the co-conspirator did not need to bring her firearm); *id.* at 471 (recalling an instance in which he had his "grip inside the club" with Watson).

a crime of violence or a controlled substance offense.[6]  "Controlled substance offense" is defined as a felony offense under federal or state law that prohibits, among other things, distribution of a controlled substance or possession of a controlled substance with intent to distribute.  U.S.S.G. § 4B1.2(b) (Nov. 2021).  The commentary additionally provided that "'controlled substance offense' include[d] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  *Id.* § 4B1.2 cmt. n.1 ("Application Note 1").

At sentencing, the district court applied the career offender enhancement when calculating Watson's offense level, based on Watson's two prior convictions for controlled substance offenses. On appeal, Watson suggests that the district court erred in applying the enhancement because his conspiracy conviction in this case is an inchoate offense, which should not qualify as a "controlled substance offense" under § 4B1.2, notwithstanding the text of Application Note 1.  Relying upon *Kisor v. Wilkie*, 588 U.S. 558 (2019), Watson contends that courts should not defer to Application Note 1 because it impermissibly expands the definition of "controlled substance offense" included in the Sentencing Guidelines and is thus invalid.

Watson's argument is foreclosed by binding Second Circuit precedent.  In *United States v. Jackson*, this Court held that "both 28 U.S.C. §§ 994(a) and 994(h) vested the [Sentencing] Commission with authority to expand the definition of 'controlled substance offense' to include aiding and abetting, conspiring, and attempting to commit such offenses" under Section 4B1.2. 60 F.3d 128, 133 (2d Cir. 1995).  We have since reaffirmed that decision numerous times,

---

[6]  Watson was sentenced under the 2021 version of the Guidelines.  The discussion in this section therefore addresses only that version of the Guidelines.  It is worth noting, however, that since 2021, § 4B1.2 has been modified to include inchoate offenses in the text of the rule, rather than in commentary.  *See* U.S.S.G. § 4B1.2(d).

including post-*Kisor*.    *See United States v. Wynn*, 845 F. App'x 63, 66 (2d Cir. 2021) ("[A]lthough our decisions in *Tabb* and *Richardson* do not explicitly address whether *Kisor* unsettles *Jackson*, *Kisor* was decided well before *Tabb* and *Richardson*, and the *Kisor* argument advanced here was briefed and discussed at length during oral argument in *Tabb*.    Moreover, both *Tabb* and *Richardson* made clear that *Jackson* is still binding precedent in this Circuit."); *United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020); *United States v. Tabb*, 949 F.3d 81, 87–89 (2d Cir. 2020).    Accordingly, the district court did not err in applying the career offender enhancement here.

## VI.    Forfeiture

Before the district court, the government sought forfeiture of multiple items of jewelry, valued at more than $100,000, seized at the time of Wiley's arrest.    The district court ordered forfeiture of a diamond-encrusted Audemars Piguet watch, valued at approximately $29,000, but denied forfeiture of the remaining pieces of jewelry on the basis that the government failed to establish that the items were acquired during the period of the conspiracy.    Wiley challenges the district court's order of forfeiture of the watch, claiming that the government did not adequately establish that it was obtained as a result of the charged offense.    We disagree.

A defendant convicted of a drug crime "'shall forfeit . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of' the crime of conviction."    *United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011) (quoting 21 U.S.C. § 853(a)(1)).    There is a rebuttable presumption that property is subject to forfeiture if the government establishes by a preponderance of the evidence that: (1) the "property was acquired by such person during the period of the violation . . . or within a reasonable time after such period,"

18

and (2) "there was no likely source for such property other than the violation."   21 U.S.C. § 853(d).   We review the district court's factual findings regarding forfeiture for clear error and its legal conclusions *de novo*.   *See United States v. Sabhnani*, 599 F.3d 215, 261 (2d Cir. 2010).

Here, the district court concluded that the Audemars Piguet watch was more likely than not acquired during the period of the charged conspiracy, based on two pieces of evidence:   (1) a June 2020 video posted to Wiley's Instagram account showing the watch still in its box, and (2) evidence that Wiley reported only $400 in income that year, but that the fair market value of the watch was $29,000.   Wiley contests this factual finding as "unduly speculative" and suggests that the district court's reasoning with respect to the watch was inconsistent with its reasoning with respect to the other jewelry.   Wiley Br. at 77.   Although there may have been alternative interpretations of the government's proffered evidence, we cannot say that the court's inferences were improper or that its finding was otherwise clearly erroneous.   Accordingly, we affirm the district court's order of forfeiture.

*       *       *

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of conviction of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court